

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AMIGO BROADCASTING, L.P., | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. A-05-CA-193-JN |
| SPANISH BROADCASTING SYSTEM, | § | |
| INC.; RAUL BERNAL; AND JOAQUIN | § | |
| GARZA, | § | |
| *Defendants.* | § | |

## DEFENDANT SPANISH BROADCASTING SYSTEM INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW

TO THE HONORABLE JAMES R. NOWLIN, UNITED STATES DISTRICT COURT JUDGE:

NOW COMES Spanish Broadcasting System, Inc. ("SBS") and under Federal Rule of Civil Procedure 50 files this its Motion for Judgment as a Matter of Law at the close of the case-in-chief presented by Plaintiff Amigo Broadcasting, L.P. and its assignee, Tejas Broadcasting, Ltd., L.L.P. ("Amigo" or "Plaintiff"). In support of this Motion, SBS would show the Court as follows.

### Preliminary Statement

Plaintiff has six claims against SBS: (1) unfair competition—misappropriation; (2) conversion; (3) tortious interference with a contract; (4) invasion of privacy; (5) constructive trust; and (6) violation of the Lanham Act. For the reasons stated herein, Spanish Broadcasting System, Inc. is entitled to judgment as a matter of law on all of Plaintiff's claims.

### Standard of Review

The standard of review for granting a judgment as a matter of law is well established in the Fifth Circuit. Under *Boeing Co. v, Shipman*, this Court must

consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. *If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper.* On the other hand, if there is substantial evidence opposed to the motion[ ], that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion[ ] should be denied and the case submitted to the jury. *A mere scintilla of evidence is insufficient to present a question for the jury.* The motion[ ] . . . should not be decided by which side has the better of the case, *nor should [it] be granted only when there is a complete absence of probative facts to support a jury verdict.* There must be a conflict in substantial evidence to create a jury question.

411 F.2d 365, 374-75 (5th Cir. 1969) (en banc) (emphasis added) (overruled on other ground by

*Gautreax v. Scurlock Marine, Inc.*, 107 F.3d 331, 339 (5th Cir. 1997)); *see also Wallace v.*

*Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001) ("[t]here is no legally sufficient

evidentiary basis when the facts and inferences point so strongly and overwhelmingly in favor of

one party that the Court believes that reasonable men could not arrive at a contrary verdict").

Under the *Erie* doctrine, a federal court sitting in diversity must apply the substantive law

of the forum state and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460 (1965); *Erie*

*Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).   Therefore, Texas substantive law governs

Southwest's Texas common law claims.   However, federal law governs the Court's review of the

sufficiency of evidence to support these claims. *See Texsun Feed Yards, Inc. v. Ralston Purina*

*Co.*, 447 F.2d 660, 672 (5th Cir. 1971) (citing *Boeing*, 411 F.2d at 368).

### Undisputed Factual Background Proven At Trial

Joaquin Garza ("Garza") created the *El Chulo y La Bola* radio show in the 1990s.  He and

Raul Bernal ("Bernal") performed the show on Spanish-language radio stations in California

beginning in approximately 1995.  Garza testified that *El Chulo y La Bola* (roughly translated to

mean "The Ladies' Man and The Bunch") is a Spanish-language radio show about a variety of

2

fictional characters (the "*El Chulo* Show"). Garza plays *El Chulo* and the audience plays *La Bola*. Bernal plays a number of characters, including Doña Mela and El Choconostle. Jim Anderson, former Chief Executive Officer of Amigo Broadcasting, L.P., and Chuck Brooks, former President of Amigo Broadcasting, L.P., both testified that Garza created the *El Chulo* show and the related intellectual property.

Brooks, Anderson, and Garza testified that from September 2001 to March 2002, Garza and Bernal performed the *El Chulo* show in Corpus Christi, Texas. They also testified that from April 2002 to November 2003, Garza and Bernal performed the *El Chulo* show for Amigo on KHHL in Austin pursuant to written employment agreements (the "Employment Agreements" or the "Agreements"). Anderson and Brooks admitted that the Employment Agreements are silent with respect to the *El Chulo* Show and any related intellectual property. Anderson, Brooks, and Garza testified that in late November 2003, Garza and Bernal left KHHL and approximately one month later began broadcasting the *El Chulo* show for SBS on KXOL in Los Angeles, California.

The Court took judicial notice that on December 8, 2003, Amigo sued Garza, Bernal, and SBS seeking injunctive relief and to recover lost profits that Amigo claimed it would lose as a result of Garza and Bernal's departure.[1] The Court also agreed to take judicial notice that on December 17, 2003, Amigo, SBS, Garza, and Bernal entered into an Agreed Temporary Injunction by which Defendants agreed that the *El Chulo* show would not air in any markets in which Plaintiff had previously broadcast the show. Plaintiff offered no evidence at trial that Defendants have not honored this agreement.

---

[1]  Amigo also sued Latin Entertainment Network ("LEN") and its President/CEO, Anthony Hernandez. Hernandez and LEN settled with Amigo on May 14, 2004.

AUSTIN: 053258.00001: 342889v2

**Argument & Authorities**

I.      **SBS is Entitled to Judgment as a Matter of Law on Plaintiff's Claims for Conversion, Unfair Competition, Lanham Act Violations, and Invasion of Privacy Because Plaintiff Failed to Prove that It Owned the *El Chulo* Show.**

Plaintiff contends that when Garza and Bernal entered into the Employment Agreements, they granted to Amigo all rights to the *El Chulo* show and related intellectual property. Plaintiff's claims for conversion, unfair competition, invasion of privacy, and violations of the Lanham Act are all based on proof of this fundamental allegation. But Plaintiff offered no such proof in this case. In fact, although Amigo hired Garza and Bernal to perform on its station, Plaintiff presented no evidence that Amigo acquired *any* rights to the *El Chulo* show or the related intellectual property. As a result, to the extent that proof of ownership is a requisite element of Plaintiff's claims and Plaintiff failed to offer such proof, SBS is entitled to judgment as a matter of law on all of these claims.

Brooks and Anderson both conceded at trial that Garza created the *El Chulo* show many years before they knew him.[2] Garza testified that he created the show in the early 1990s and has been using the *El Chulo* show as the basis of his career in the radio industry since then. Notwithstanding the undisputed evidence that Garza created the *El Chulo* show, Plaintiff contended at trial that it obtained an interest in the show by virtue of the terms of Garza and Bernal's Employment Agreements with Amigo. However, there was no evidence at trial that any provision of the Employment Agreements transferred any right, title, or interest in the *El Chulo* show to Amigo. In fact, the evidence at trial confirmed that the Agreements are completely silent with respect to the *El Chulo* show. There is no mention of *El Chulo*, *La Bola*, or the *El*

---

[2] Plaintiff also concedes this in its Second Amended Petition. *See* Plaintiff's Second Amended Pet., ¶ 15.

*Chulo* show anywhere in the Agreements.  In fact, Anderson conceded at trial that, in hindsight, he should have put these words somewhere in the Agreements.

At trial, Plaintiff relied on § 1.1 of the Agreements to support its claim of a proprietary interest in the *El Chulo* Show.[3]  That section provides only that "Employee hereby grants Employer a nonexclusive royalty free license to use Employee's name and/or likeness to promote the Station and its programming, including any program hosted by Employee or syndicated by Employer, during the term of this Agreement. . . ."[4]  Thus, the only licenses Garza and Bernal granted to Amigo were the right to use their names and likenesses to promote KHHL and its programming.  Nothing in the Agreements grants a license to the *El Chulo* show or the related intellectual property, and there was no evidence introduced at trial to the contrary.

The terms of the Employment Agreements are unambiguous.  Therefore, this Court must enforce the unambiguous language in the Agreements as written.  *See Sulzer Carbomedics, Inc. v. Oregon Cardio-Devices, Inc.*, 257 F.3d 449, 457 (5th Cir. 2001) (citing *Sun Oil (Del.) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981) (language in a contract must be enforced as written, "looking at the objective intent as manifested by the language used, rather than interpreting it by attempting to divine the subjective intent of the parties"); *Hitzelberger v. Samedan Oil Corp.*, 948 S.W.2d 497, 504 (Tex. App.—Waco 1997, writ denied) (primary goal in construing a contract is to ascertain and give effect to the intentions of the parties as expressed in the instrument).  The Agreements only granted Amigo a nonexclusive right to use the name and likeness of Joaquin Garza and Raul Bernal.  Amigo did not acquire any rights to the *El Chulo* show.  As a matter of law, in the absence of any evidence that Amigo obtained any ownership

---

[3] Plaintiff makes this same unfounded argument in its Second Amended Petition.  *See id.*, ¶ 16.

[4] Employment Agreements, § 1.1.

5

rights to the *El Chulo* show, SBS is entitled to judgment as a matter of law on Plaintiff's claims

for conversion, unfair competition, invasion of privacy, and violations of the Lanham Act.

**II.     Plaintiff's Claim for Conversion Fails as a Matter of Law for Three Additional Reasons.**

To recover for conversion under Texas law, a Plaintiff must prove the following

elements: (1) the plaintiff owned, possessed, or had the right of immediate possession of the

property; (2) the property was tangible personal property; (3) the defendant wrongfully exercised

dominion or control over the property; and (4) the plaintiff suffered injury.  *See Neles-*

*Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 981-82 (S.D. Tex. 1997); *Sefton v. Jew*, 201

F. Supp. 2d 730, 751 (W.D. Tex. 2001); *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d

146, 147-48 (Tex. 1997), *rev'd in part on other grounds*, 939 S.W.2d 146 (Tex. 1997).

Amigo cannot prove the first element of its conversion claim as a matter of law.  As

explained above, Garza created in the 1990s and has always owned the exclusive rights to the *El*

*Chulo* show.  In April 2002, when Garza and Bernal entered into the Employment Agreements,

Amigo only obtained a nonexclusive right to use Garza and Bernal's names and likenesses to

promote its station and programs.   Amigo never obtained ownership, possession, or an

immediate right of possession to the *El Chulo* show or any related intellectual property.

Therefore, as a matter of law, no conversion could have occurred.

Second, the tort of conversion only applies to tangible personal property.  *See Neles-*

*Jamesbury, Inc.*, 974 F. Supp. at 981-82 (Texas law does not recognize claims for conversion of

a trademark); *Sefton v. Jew*, 201 F. Supp. 2d 730, 751 (W.D. Tex. 2001) (tort of conversion is

limited to tangible property); *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex.

App.—Dallas 2001, no pet.) (Texas law has never recognized a claim for conversion of

intangible property); *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d

6

214, 222 (Tex. App.—Waco 1993, writ denied) (tort of conversion deals with tangible chattels), *superseded by statute on other grounds*, TEX. CIV. PRAC. & REM. CODE § 41.006, *in Computek Computer & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 224 (Tex. App.—Dallas 2005, no pet. h.). Plaintiff offered no evidence that SBS converted any tangible personal property. For this reason, SBS is entitled to judgment as a matter of law on Amigo's conversion claim. *See Sefton*, 201 F. Supp.2d at 750-51 (granting defendant's motion to dismiss plaintiff's conversion claim, which was based on wholly intangible property).

Third, Plaintiff offered no evidence that SBS wrongfully exercised dominion or control over any tangible property belonging to Amigo. *See Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002). In the absence of such evidence, SBS is entitled to judgment as a matter of law on Plaintiff's conversion claim.

### III.     Plaintiff's Claim for Unfair Competition Fails as a Matter of Law for Two Additional Reasons.

Plaintiff also failed to prove the elements of unfair competition. To establish a claim of unfair competition, Plaintiff must prove the following elements: (1) the creation of plaintiff's product through extensive time, labor, skill, and money; (2) the defendant's use of that product in competition with the plaintiff; and (3) commercial damage to the plaintiff. *See U.S. Sporting Prods., Inc.*, 865 S.W.2d at 218.

First, as noted above, Amigo did not create the *El Chulo* show. The evidence at trial established that Garza created the *El Chulo* program long before he and Bernal entered Employment Agreements with Amigo in April 2002. Therefore, Amigo failed to prove the first element of its unfair competition claim as a matter of law.

Second, SBS did not compete against Amigo. The evidence at trial established that from January 2004 through June 2004, SBS broadcast the *El Chulo* show on one radio station in Los

7

Angeles, California. There was no evidence that SBS ever broadcast or syndicated the *El Chulo*

show in any other market. Brooks and Anderson testified that Amigo did not have any radio

stations or syndicated programs airing in the Los Angeles market during 2003 or 2004.

Therefore, SBS's broadcast of the *El Chulo* show in Los Angeles was not "in competition" with

the Plaintiff. *See Loeb v. Turner*, 257 S.W.2d 800, 803 (Tex. Civ. App.—Dallas 1953, no writ)

(because radio stations located in two different markets were not in competition with one

another, the tort of unfair competition did not apply).

## IV.    Plaintiff's Claim for Invasion of Privacy Fails As A Matter of Law for Four Additional Reasons.

To recover for invasion of privacy by misappropriation, a plaintiff must prove that: (1)

the defendant appropriated the plaintiff's name or likeness for the value associated with it; (2)

the plaintiff can be identified from the publication; and (3) there was some advantage or benefit

to the defendant. *Express One Int'l, Inc.*, 53 S.W.3d at 900. Here Plaintiff has presented no

evidence that SBS appropriated Amigo's name or likeness, or that Amigo could be identified by

any publication by SBS. In the absence of any evidence of the first and second elements of

Amigo's invasion of privacy claim, SBS is entitled to judgment as a matter of law on this claim.

## V.    Plaintiff's Claim for Violation of the Lanham Act Fails As A Matter of Law for Two Additional Reasons.

Under the Lanham Act, a plaintiff must prove that,

> in connection with a good or service . . . a person used in commerce any word,
> term, name, symbol, or device, or any combination thereof, or any false
> designation of origin, false or misleading description of fact, or false or
> misleading representation of fact, which . . . *is likely to cause confusion, or to
> cause mistake, or to deceive as to the affiliation, connection, or association of
> such person with another person, or as to the origin, sponsorship, or approval of
> his or her goods, services, or commercial activities by another person*, or in
> commercial advertising or promotion, misrepresents the nature, characteristics,
> qualities, or geographic origin of his or her or another person's goods, services, or
> commercial activities. . . .

15 U.S.C. § 1125(a) (emphasis added).   Here, Plaintiff has not proved any violation of the Lanham Act.

First, there was no evidence presented at trial that SBS used any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact.  Second, there is no evidence of any actual or likelihood of confusion, mistake, or deception about (1) the origin, affiliation, connection, or association of SBS with another person, or (2) the origin, sponsorship, or approval of SBS's goods, services, or commercial activities by another person.  Third, there is no evidence that, in commercial advertising or promotion, SBS misrepresented the nature, characteristics, qualities, or geographic origin of its or another person's goods, services, or commercial activities.

Furthermore, to the extent Plaintiff's Lanham Act claim is based on the unfounded allegation that the Employment Agreements granted Amigo "proprietary interests" in the *El Chulo* show and its related intellectual property, this claim also fails as a matter of law.  As established by the evidence, the Employment Agreements are completely silent with respect to the terms *El Chulo*, *La Bola*, or the *El Chulo* show.   The unambiguous language of the Agreements granted Amigo a right to use Garza and Bernal's names and likenesses in order to promote Amigo's stations and programs during the term of the Agreements.  Garza and Bernal's names are merely descriptive terms.  *See Vais Arms, Inc. v. Vais*, 383 F.3d 287, 291 (5th Cir. 2004) (names are descriptive marks); *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (same).  Descriptive terms such as these are *not* entitled to trademark protection under either the common law or the Lanham Act.  *See 815 Tonawanda Street Corp. v. Fay's Drug Co., Inc.*, 842 F.2d 643, 647-48 (2nd Cir. 1988) (personal names are descriptive terms that are not

9

entitled to trademark protection).   Therefore, for these additional reasons, SBS is entitled to judgment as a matter of law on Amigo's Lanham Act claim.

## VI.   Plaintiff's Claim for Tortious Interference Fails as a Matter of Law for Four Additional Reasons.

Plaintiff has not established the elements needed to recover for tortious interference.  To recover for tortious interference with contract under Texas law, Amigo must prove: (1) the existence of a contract subject to interference; (2) the occurrence of an act of interference that was willful and intentional; (3) the act was the proximate cause of the claimant's damages; and (4) actual damage or loss occurred.  *See John Paul Mitchell Sys. V. Randalls Food Mkts., Inc.*, 17 S.W.3d 721, 730 (Tex. App.—Austin 2000, pet. denied); *Diesel Injection Sales & Servs., Inc. v. Renfro*, 656 S.W.2d 568, 573 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.).

First, there is no evidence that SBS interfered with Amigo's contracts with Garza and Bernal at the Miami meeting in November 2003 or anytime thereafter.  Jason Shrinsky (outside counsel for SBS), James Cueva (in-house counsel for SBS), Garza, and Hernandez testified that SBS made no offers of employment to Garza and Bernal at the Miami meeting.  Hernandez and Garza testified that the people at the Miami meeting discussed the possibility of having SBS either syndicate or become an affiliate of the *El Chulo* show.   They also testified that no negotiations concerning the employment of Garza and Bernal or offers of employment to Garza and Bernal were discussed at that time.  Amigo's corporate representative testified that he did not consider Garza and Bernal's participation at the Miami meeting a breach of their Agreements.  Shrinsky testified that he became aware after the Miami meeting that SBS's senior management was, in fact, *opposed* to hiring Garza and Bernal because SBS had already worked with Garza and Bernal and was reluctant to "recycle" the talent.  There is *no evidence* that anyone at SBS

10

contacted Garza or Bernal for any reason in between the Miami meeting in November 2003 and the entry of the Agreed Temporary Injunction on December 17, 2003.

Second, the evidence established that Garza and Bernal resigned or were terminated long before SBS ever gave Garza or Bernal an offer of employment. Amigo's Termination Report (Defendant's Exhibit D-96) showed—according to Amigo's records—that Garza and Bernal were terminated on November 26, 2003. Therefore, as early as November 26, 2003 and certainly no later than December 17, 2003, Garza and Bernal no longer had active employment contracts with Amigo. Absent the existence of an actual employment agreement, Garza and Bernal were—as Cueva testified Hernandez consistently represented to him—free to engage in negotiations with or become employed by another radio station. *See Davis v. HydPro, Inc.*, 839 S.W.2d 137, 140 (Tex. App.—Eastland 1992, writ denied) (stating plaintiff must show defendant knowingly induced breach; it is not sufficient that defendant reaped advantages of broken contract). Cueva testified that until after the date of the Agreed Temporary Injunction on December 17, 2003, he told Hernandez that he had no authority to give any offer of employment to Garza and Bernal, and no other person at SBS had authorized such an offer.

Third, under the Agreed Temporary Injunction permit SBS to hire Garza and Bernal and air the *El Chulo* show in Los Angeles, California.[5] The evidence established that this is exactly what SBS did *after* the Court signed the Agreed Temporary Injunction.

Fourth, Cueva and Shrinsky both testified that they never have had any intent to injure or interfere with Amigo's business. Shrinsky specifically testified that he has worked with Brooks and Anderson several times over the years in various business transactions and holds both men in high regard. There was no evidence of any bad motive on the part of SBS with respect to

---

[5] The Court has taken judicial notice of the Agreed Temporary Injunction.

11

Amigo.  Shrinsky and Cueva repeatedly and consistently testified that they believed the steps

they took in reaction to the barrage of emails from Tony Hernandez related to his attempts to do

business with SBS and the email from Anderson complied with all applicable laws and

regulations.

Fifth, because Garza and Bernal either resigned on their own initiative or were terminated

by Amigo, as a matter of law SBS could not have *caused* Garza and Bernal to breach the

Employment Agreements with Amigo.  In other words, there was no evidence that SBS induced

Garza and Bernal to breach these Agreements with Amigo.  Therefore, SBS is entitled to

judgment as a matter of law on this claim.  *See Bray v. Squires*, 702 S.W.2d 266, 271 (Tex.

App.—Houston [1st Dist.] 1985, no writ) (it must be shown that the third party's interference

was the proximate cause of the breach of relationship; there is no actionable wrong if the

employees act on their own initiative).

## VII.   Plaintiff's Constructive Trust "Claim" Fails as a Matter of Law.

To establish that a constructive trust exists, the proponent must prove three elements: (1)

breach of a special trust or confidence, fiduciary relationship, or actual fraud; (2) unjust

enrichment of the wrongdoer; and (3) tracing to an identifiable *res*.  *See In re Monnig's Dept.

Stores, Inc.*, 929 F.2d 197, 201 (5th Cir. 1991) (applying Texas law) (citations omitted);

*Mowbray v. Avery*, 76 S.W.3d 663, 681 n.27 (Tex. App.—Corpus Christi 2002, pet. denied).

Texas courts require a proponent to "strictly prove" each of these elements.  *See Hubbard v.

Shankle*, 138 S.W.3d 474, 485 (Tex. App.—Fort Worth 2004, pet. denied) (citing *Ginther v.

Taub*, 675 S.W.2d 724, 725 (Tex. 1984)).  Whether there is a special or fiduciary relationship is a

question of law.  *See Monnig's Dept. Stores, Inc.*, 929 F.2d at 202.

AUSTIN: 053258.00001: 342889v2

Plaintiff failed to prove that any special trust and confidence or fiduciary relationship existed between Amigo and SBS.  Plaintiff failed to prove that SBS committed fraud.  Finally, Plaintiff failed to introduce evidence of an identifiable *res*.  Therefore, SBS is entitled to judgment as a matter of law on Plaintiff's claim for constructive trust.

**VIII.   Plaintiff Provided No Evidence that SBS's Alleged Actions Damaged the Plaintiff.**

Although evidence of multiple elements is missing from each of Plaintiff's causes of action, a common thread among each cause of action is that none of SBS's alleged actions *caused* Plaintiff's alleged *damages*.  *See Rhone-Poulenc Rorer Pharms., Inc. v. Marion Merrell Dow, Inc.*, 93 F.3d 52 (8th Cir. 1996) (Lanham Act plaintiff may not recover if it fails to prove that defendant's actions caused claimed harm); *United Mobile Networks v. Deaton*, 939 S.W.2d 146, 148 (Tex. 1997) ("plaintiff must prove damages before recovery is allowed for conversion"); *John Paul Mitchell Sys. v. Randalls Food Mkts., Inc.*, 17 S.W.3d 721, 730 (Tex. App.—Austin 2000, pet. denied) (actual damage or loss required to recover for claim of tortuous interference); *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. App.—Waco 1993) (commercial damages element to unfair competition), *superseded by statute on other grounds*, TEX. CIV. PRAC. & REM. CODE § 41.006, *as recognized in Computek Computer & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 224 (Tex. App.—Dallas 2005, no pet. h.).

Plaintiff here has produced no competent evidence that SBS caused Plaintiff's alleged damages.  Plaintiff needs to establish that it lost profits that were specifically caused by the departure of the *El Chulo* Show.[6]  Plaintiff did not do this.  Instead, Plaintiff's damages expert, Robert Rea, relied on a damages model that purports to show the alleged lost profits of KHHL—

---

[6] Plaintiff also makes an attempt at an unjust enrichment damage model.  However, unjust enrichment is only available should Plaintiff prove successful on its Lanham Act claim.  And, because Plaintiff's Lanham Act claim fails for the reasons stated below, there is no reason to identify the fallacies of Rea's opinion on that issue.

that is, *of the entire station*—regardless of what may have caused that loss.  Because Plaintiff's

expert did not show that Plaintiff's alleged damages were *caused* by any of the Defendants'

conduct (and particularly by SBS's conduct), Plaintiff's claim for lost profits fails as a matter of

law.

"The standard under Texas law for proving lost profits is onerous." *Info. Commc'n Corp.*

*v. Unisys Corp.*, 181 F.3d 629, 633 (5th Cir. 1999).  Indeed, lost profits "must be shown by

competent evidence with reasonable certainty." *Tex. Instruments, Inc. v. Teletron Energy Mgmt.,*

*Inc.*, 877 S.W.2d 276, 279 (Tex. 1994).  Lost profits may not be recovered where they are "too

uncertain or speculative, or where the enterprise is new or unestablished." *Id.*  In fact,

> [i]n determining whether the claimed lost profits are speculative, courts are to
> consider whether they are "dependent on uncertain or changing market
> conditions, or on chancy business opportunities, or on promotion of untested
> products or entry into unknown or unviable markets, or on the success of a new
> and unproven enterprise." *Id.* Texas courts have not hesitated to direct verdicts
> where plaintiffs have failed to present evidence of lost profits meeting these
> standards. [. . .] *See also Szczepanik v. First Southern Trust Co.*, 883 S.W.2d 648,
> 650 (Tex. 1994) (denying recovery of lost profits where the plaintiffs evidence of
> lost profits was deemed too speculative); *Holt v. Atherton*, 835 S.W.2d 80, 85-86
> (Tex. 1992) (same).

*Info. Commc'n Corp.*, 181 F.3d at 633.

Moreover, an injured party must do more than show that it suffered some lost profits.

*Tex. Instruments*, 877 S.W.2d at 279.  At a minimum, opinions or lost-profit estimates must be

based on objective facts, figures, or data from which the lost-profits amount may be ascertained.

*Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649, (Tex. 1994) (per curiam); *Holt Atherton*

*Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992).

Here, the only purported evidence of lost profits—Rea's testimony—is no evidence that

SBS caused Amigo to lose profits.  Rea's opinion that Amigo lost any profits as a result of the

departure of the *El Chulo* Show is nothing more than his unsupported conclusion and is not

AUSTIN: 053258.00001: 342889v2

evidence of either lost profits or causation.  In fact, Rea admitted in his testimony at trial that he "assumed' every bit of the difference between KHHL's financial performance before and after the departure of the *El Chulo* show was because of that departure.  In fact, however, Rea conceded that a number of factors could have affected KHHL's profitability including (1) Amigo management's decision to sell KHHL (and other stations) which, when announced in early 2004, led to the loss of key employees; (2) a significant change in the level of competition in the Austin Spanish-language media market; (3) a change in the aggressiveness of Amigo's sales staff; (4) a significant reduction in Amigo's promotional efforts; and (5) changes in the location of KHHL's transmitter tower.  Rea did not attempt to (1) eliminate these other factors as a cause of Amigo's purported lost profits during the relevant time period, or (2) consider what weight should be given to these other factors in evaluating the alleged effects of SBS's and the other Defendants' conduct on Amigo's business.

Because of Rea's refusal to consider other possible causes, his testimony does not meet either the reliability standards set out in the standards for admission announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) ("*Daubert*"), and subsequently codified in Amended Federal Rule of Evidence 702, or the reasonable certainty standard required for a showing of lost profits.  Rea's ignorance and resultant guesswork is the "antithesis of the methodological rigor demanded by *Daubert*."  *See Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*, 350 F. Supp.2d 582, 589 (D. Del. 2004) (accepting Defendant's argument that Plaintiff's expert's "blind faith" in a "sales plan" or "marketing objective" is the "antithesis of the methodological rigor demanded by *Daubert*"); *see also Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 420 (7th Cir. 2005) (holding that inferences based on company's internal projections, which rest completely on a company's or putative expert's say-so, are inherently

unreliable); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987) (affirming district court's decision to exclude testimony of expert who failed to rule out other causes and instead simply chose the cause that was most advantageous to plaintiff's claim). Consequently, Rea's testimony is not evidence of lost profits or causation. Without competent evidence of either damages or causation, all of Plaintiff's claims fail as a matter of law.

## IX.   Plaintiff's Claim for Attorneys' Fees Fails as a Matter of Law.

Plaintiff alleges that it is entitled to recover its attorneys' fees from SBS. However, a prevailing party can recover attorneys' fees from an opposing party only if such recovery is expressly authorized by agreement between the parties or statute. It is undisputed that no agreement exists between Plaintiff and Defendant SBS authorizing recovery of attorneys' fees. In addition, no state statute exists authorizing Plaintiff to recover attorneys' fees from Defendant SBS on the claims asserted in this action. *See generally* TEX. CIV. PRAC. & REM. CODE § 38.001; *see also, e.g., Hageman/ Fritz, Byrne, Head & Harrison, L.L.P. v. Luth*, 150 S.W.3d 617, 627 (Tex. App.—Austin 2004, no pet.) (attorneys' fees generally not recoverable in conversion cases); *Martin-Simon v. Womack*, 68 S.W.3d 793, 798 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (no statutory basis for recovery of attorney fees for a tortious-interference claim); *Stewart & Stevenson Servs. v. Serv-Tech, Inc.*, 879 S.W.2d 89, 103-104 (Tex. App.—Hous. [14th Dist.] 1994, writ denied) (noting that attorneys' fees not recoverable for misappropriation claim).

One relevant federal statute allows for recovery of attorneys' fees in limited circumstances. To obtain attorneys' fees under the Lanham Act, a case must be "exceptional." *See* 15 U.S.C. § 1117(a). The Fifth Circuit has consistently held that cases are exceptional under this statute when the defendant's acts can be characterized as malicious, fraudulent, deliberate, or willful, and there has been a showing of the defendant's high degree of culpability. *March*

16

*Madness Athletic Ass'n LLC v. Netfire Inc.*, 120 Fed. Appx. 540, 546 (5th Cir. 2005); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372-73 (5th Cir. 2000); *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996). The prevailing party has the burden to demonstrate the exceptional nature of the case by clear and convincing evidence. *March Madness Athletic Ass'n*, 120 Fed. Appx. at 546; *Pebble Beach Co. v. Tour 18 Limited*, 155 F.3d 526, 555 (5th Cir. 1998), *abrogate on other grounds by TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001); *Seven-Up*, 86 F.3d at 1390. Even if a party demonstrates that a case is exceptional, the trial court retains discretion not to award attorneys' fees. *Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 696 (5th Cir. 1992).

Plaintiff in this case offered no evidence—and certainly not clear and convincing evidence—that Defendant's actions were exceptional. For example, in *Pebble Beach*, the court awarded no attorneys' fees when the defendant intentionally and deliberately copied famous golf holes in designing its golf course. 155 F.3d at 555-56. In *Texas Pig Stands*, the court held that the defendant's use of another company's trademark was unexceptional for purposes of an attorneys' fee award even though the jury found the defendant's conduct was willful. 951 F.2d at 697. In *CJC Holdings, Inc. v. Wright & Lato, Inc.*, the court held that the case was unexceptional despite the fact that the defendant deliberately copied jewelry produced by the plaintiff. 979 F.2d 60, 65-66 (5th Cir. 1992). In *Seven-Up Co. v. Coca-Cola Co.*, the court held that a beverage company that made presentations to certain independent bottlers that used false and misleading information regarding a competing beverage did not amount to an extraordinary violation of the Lanham Act. 86 F.3d 1379 (5th Cir. 1996). And most recently, in *March Madness Athletic Ass'n LLC*, the court held that denial of attorneys' fees to a trademark owner who prevailed in a cybersquatting case was not an abuse of discretion when the owner's rights

17

were not readily apparent when the defendant acquired the domain name in question and the owner was unable to prove damages.  120 Fed. Appx. at 546.

In these cases, none of the defendants' behavior demonstrated a high enough degree of culpability to cause the case to be "exceptional" for purposes of awarding attorneys' fees under the Lanham Act.  There is no evidence to support a finding that this is an "exceptional case" under the Lanham Act as a matter of law.

## X.    Plaintiff's Claim for Punitive Damages Fails as a Matter of Law.

To recover punitive damages under Texas law, a plaintiff must prove—by clear and convincing evidence—that the underlying harm resulted from either (1) fraud; (2) malice; or (3) gross negligence on the part of the defendant.  TEX. CIV. PRAC. & REM. CODE § 41.003.  In this case, Plaintiff presented no evidence that SBS engaged in fraud, malice, or gross negligence, much less the clear and convincing evidence needed to support an award of exemplary damages. Accordingly, SBS is entitled to judgment as a matter of law on Plaintiff's claim for punitive damages.

## Conclusion

For these reasons, Defendant Spanish Broadcasting System, Inc. respectfully requests that the Court grant this Motion for Judgment as a Matter of Law, that the Court dismiss all claims against Spanish Broadcasting System, Inc. with prejudice, that Plaintiff Amigo Broadcasting, L.P. and its assignee Tejas Broadcasting, Ltd, L.L.P. pay all costs of court, including the costs of Defendant Spanish Broadcasting System, Inc., and that the Court grant such other and further relief to Defendant Spanish Broadcasting System, Inc. to which it may show itself entitled.

18

Respectfully submitted,

John K. Schwartz
State Bar No. 17865325
J. Marie Hejl
State Bar No. 24041083
LOCKE LIDDELL & SAPP LLP
100 Congress Avenue, Suite 300
Austin, Texas  78701
(512) 305-4700 (Telephone)
(512) 305-4800 (Telecopier)

ATTORNEYS FOR DEFENDANT
SPANISH BROADCASTING SYSTEM, INC.

## CERTIFICATE OF SERVICE

I certify by my signature below that a true and correct copy of the foregoing has been forwarded by hand delivery to the following counsel of record this 4th day of May, 2006.

**VIA HAND DELIVERY**
J. Michael Tibbals
Snell Wylie & Tibbals
8150 N. Central Expressway, Suite 1800
Dallas, Texas  75206

**VIA HAND DELIVERY**
Bruce A. Griggs
Ogletree, Deakins, Nash,
    Smoak & Stewart, P.C.
301 Congress Ave., Suite 1250
Austin, Texas  78701

J. Marie Hejl

AUSTIN: 053258.00001: 342889v2

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AMIGO BROADCASTING, L.P., | § | |
|     *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. A-05-CA-193-JN |
| SPANISH BROADCASTING SYSTEM, | § | |
| INC.; RAUL BERNAL; AND JOAQUIN | § | |
| GARZA, | § | |
|     *Defendants.* | § | |

## ORDER ON DEFENDANT SPANISH BROADCASTING SYSTEM, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW AT CLOSE OF PLAINTIFF'S EVIDENCE

Came on to be considered Defendant Spanish Broadcasting System, Inc.'s Motion for Judgment as a Matter of Law (the "Motion"). Having considered the Motion, the Court is of the opinion that the Motion has merit and should be granted.

It is, therefore, ORDERED that the Motion is GRANTED.

It is further ORDERED that all claims alleged by Plaintiff Amigo Broadcasting, L.P. and its assignee Tejas Broadcasting, Ltd., L.L.P. against Defendant Spanish Broadcasting System, Inc. be and are DISMISSED WITH PREJUDICE to the refiling of same.

It is further ORDERED that Plaintiff Amigo Broadcasting, L.P. and its assignee Tejas Broadcasting, Ltd., L.L.P. shall pay all costs incurred by Defendant Spanish Broadcasting System, Inc. in this cause.

SIGNED this _____ day of May, 2006.


_____
JAMES R. NOWLIN
UNITED STATES DISTRICT JUDGE