UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2006 MAY -4 AM 8:38
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ____ DEPUTY

| | | |
|---|---|---|
| AMIGO BROADCASTING, L.P., | § § § | |
| Plaintiff, | § § | |
| V. | § § | |
| LATIN ENTERTAINMENT NETWORK, INC.; ANTHONY HERNANDEZ; SPANISH BROADCASTING SYSTEM, INC.; RAUL BERNAL; AND JOAQUIN GARZA, | § § § § § § § | CIVIL NO. A-05-CA-193 LY |
| Defendants. | § | |

**DEFENDANTS RAUL BERNAL AND JOAQUIN GARZA'S
MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendants Raul Bernal and Joaquin Garza move this Court for judgment as a matter of law on all claims asserted against them by Plaintiff Amigo Broadcasting, L.P. ("Amigo").

_____/s/ Scott Brutocao_____
Bruce A. Griggs
Texas State Bar No. 08487700
Scott Brutocao
Texas State Bar No. 24025781
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
301 Congress Avenue, Suite 1250
Austin, Texas 78701
512.344.4700
512.344.4701 facsimile

Attorneys for Defendants Joaquin Garza
and Raul Bernal

## I. INTRODUCTION AND GROUNDS FOR JUDGMENT AS A MATTER OF LAW

Pursuant to Fed. R. Civ. P. 50, Defendants Raul Bernal ("Bernal"), and Joaquin Garza ("Garza") move for judgment as a matter of law in their favor on the claims asserted against them by Plaintiff Amigo Broadcasting, LP ("Amigo"). Judgment as a matter of law is appropriate when a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue. *Medical Care Am., Inc. v. Nat'l Union Fire Ins. Co.*, 341 F.3d 415, 420 (5th Cir. 2003). Amigo has rested its case, and has thus been fully heard with regard to all of its claims. It has not presented legally sufficient evidence of each the required elements of its claims for breach of contract, misappropriation / unfair competition, conversion, breach of fiduciary duty, constructive trust, invasion of privacy by misappropriation, and violation of the Lanham Act.

## II. STANDARD FOR JUDGMENT AS A MATTER OF LAW

Federal courts grant judgment as a matter of law whenever "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *Simblest v. Maynard*, 427 F.2d 1, 4 (2d. Cir. 1970) (Timbers, J.) (cited in 9A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u>, § 2524 (2d ed. 1995) (hereinafter "Wright & Miller") as a leading statement of the test to be applied in a motion for judgment as a matter of law).

> The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury properly could find a verdict for that party.

*Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986); *see also Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997) (citing Fed R. Civ. P. 50(a)(1)).

### III. GARZA AND BERNAL ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON AMIGO'S CLAIM FOR BREACH OF CONTRACT

To recover on its claim for breach of contract, Amigo must plead and prove each of the following elements: 1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) a breach of the contract by the defendants; and 4) damages sustained by the plaintiff as a result of the breach. *Southwell v. University of Incarnate Word*, 974 S.W.2d 351, 354-55 (Tex. App.—San Antonio 1998, pet. denied).

#### A. The Employment Agreements Are Not Enforceable

Amigo's claim fails because it has not satisfied the first element: the existence of a valid contract. Specifically, the contractual provisions that purport to prohibit Garza and Bernal from using their own names or likenesses following their employment with Amigo are an unlawful restraint of trade. Because Amigo's claims necessarily depend upon the enforceability of these provisions, the entirety of the Agreements are void as a matter of law. *Sacks v. Dallas Gold & Silver Exch.*, 720 S.W.2d 177, 180 (Tex. App. –Dallas 1986, no writ) (a contract with provisions that are against public policy cannot be enforced); *see also Penny v. Orthalliance, Inc.*, 255 F. Supp. 2d 579 (N.D. Tex. 2003).

> The final sentence of Section 1.1 of the Employment Agreement states:
>
> During the term of this Agreement and the period set forth in Section 1.8(b) hereof, Employee shall not permit any other party to use Employee's name and/or likeness for commercial or other business purposes without first obtaining the written consent of Employer which may be granted or withheld by Employer in its sole and absolute discretion.
>
> Exhibits D-34 & 35, Sections 1.1.

According to the Amigo, the "term" of the Agreements extended until April 2005, with the "period" in Section 1.8(b) defined to be one additional year following the expiration of the

term. Thus, under Amigo's construction of the Agreements, Garza and Bernal were prohibited from using their own names and likenesses for any commercial or business purpose until April 2006, regardless whether Garza and Bernal resigned from their employment with Amigo or even whether Amigo terminated the Agreements.

This purported restraint is unlimited in scope, and on that basis alone is unlawful. Tex. Bus. & Com. Code Ann. § 15.50(a); *Shesunoff Management Services, L.P v. Johnson.*, 124 S.W.3d 678, 684 (Tex. App. Austin 2003, pet granted Sept. 10, 2004). Because the effect of these provisions is to absolutely prohibit Garza and Bernal from working for anyone other than Amigo without Amigo's consent, the provisions at a minimum must satisfy the requirements of Section 15.50(a) of the Texas Business and Commerce Code to be enforceable. Section 15.50(a) requires that a covenant not to compete be ancillary to or part of an otherwise enforceable agreement at the time the agreement is made. Tex. Bus. & Comm. Code Section 15.50(a). The consideration given by the employer in the "otherwise enforceable agreement" must give rise to the employer's interest in restraining the employee. *See, e.g. Shesunoff,* 124 S.W.3d at 684; *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452 (Tex. App. –Austin 2004, pet. filed November 15, 2004); *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459 (5th Cir. 2003).

Here, the provisions at issue are not ancillary to the Employment Agreements. No evidence was presented that Garza and Bernal were provided any consideration in the Agreements that give rise to Amigo's interest in prohibiting them from using their own names and likenesses for a commercial or business purpose. Texas law has long disfavored restraints on competition, much less such a stark restraint on trade. See Tex. Bus. & Com. Code Ann. § 15.05(a) (providing "every contract, combination, or conspiracy in restraint of trade or commerce is unlawful."). *See also Peat Marwick Main & Co. v. Hass*, 818 S.W.2d 381, 385 (Tex. 1991)

**Defendants' Garza and Bernal's Motion for Judgment as a Matter of Law – Page 3**

("We hold that provisions clearly intended to restrict the right to render personal services are in restraint of trade and must be analyzed for the same standards of reasonableness as covenants not to compete to be enforceable."); *Hospital Consultants, Inc. v. Potyka*, 531 S.W.2d 657 (Tex. App. –San Antonio 1975) (writ ref'd n.r.e.). Because these provisions are an unlawful restraint of trade and against public policy, the Agreements are void as a matter of law. *See Penny v. Orthalliance, Inc.*, 255 F. Supp. 2d 579, 583 (N.D. Tex. 2003); *Flynn Bros., Inc. v. First Med. Assocs.*, 715 S.W.2d 782, 785 (Tex. App. -Dallas 1986, writ ref'd n.r.e.) (holding the design, effect, and purpose of the parties' whole contractual scheme was developed to do indirectly that which they could not do directly under the Medical Practices Act, therefore the contracts were void in their entirety); *Sacks v. Dallas Gold & Silver Exch., Inc.*, 720 S.W.2d 177, 180 (Tex. App. -Dallas 1986, no writ) (holding entire agreement invalid when the illegal provisions could not be severed from the legal provision because the legal and illegal activities were so commingled).

### B. Garza and Bernal Did Not Breach the Agreements

Amigo's breach of contract claim also independently fails because Amigo has presented no evidence that either Garza or Bernal breached any provision of the Agreements. Whether the Defendants breached the alleged contract is a question of law for the Court to decide. *Bank One v. Stewart*, 967 S.W.2d 419, 432 (Tex. App. –Houston [14th Dist.] 1998, pet. denied); *ITT Commercial Fin. Corp. v. Riehn*, 796 S.W.2d 248, 253 n.3 (Tex. App. –Dallas 1990, no writ). In its Second Amended Petition and at trial, Amigo alleged that Defendants breached the Agreements in six ways, each of which will be addressed in turn:

First, Amigo claims that Garza and Bernal have used the "Amigo Trade Secrets" in furtherance of SBS's business and have unlawfully disseminated the Amigo trade secrets to

others. The "Amigo Trade Secrets" are defined as "unique skills, concepts, practices, programming techniques, and other proprietary information," including "proprietary interests in Amigo's on-air personalities." But Amigo presented no evidence of such trade secrets. Rather, Amigo conceded that Garza developed the El Chulo characters and content long before Amigo was in the picture, and that Garza and Bernal performed the show in multiple markets prior to coming to work for Amigo in 2002.[1] Absolutely nothing in the Employment Agreements transfers the El Chulo show, its characters, or content to Amigo. Indeed, the evidence is directly to the contrary: the unambiguous language of the agreements does not transfer to Amigo any right of ownership in the El Chulo show, concept, or characters that Garza and Bernal had worked to develop long before their employment with Amigo. Because it never acquired any ownership interest in the El Chulo show, Amigo's claim that Garza and Bernal breached the Agreements by allowing SBS to use the show content and characters subsequent to their resignation from Amigo necessarily fails. Likewise, because there is no legally sufficient evidentiary basis for a reasonable jury to find that Garza or Bernal ever had or later used or disseminated any other alleged Amigo Trade Secrets, the remainder of Amigo's claim predicated on this theory fails.

Second, Amigo claims that Garza and Bernal are directly competing with Amigo in contravention of the specific non-competition clauses in their Agreements. That clause, found at Section 1.8(b), states:

> ...Employee further covenants and agrees that he shall not for 12 months following Employee's termination of employment with Employer, directly or indirectly, host, co-host or appear as a guest, commentator or any other "on-air" positions with a commercial Spanish language radio station within the Austin, Texas broadcast area or any other broadcast area in which Employee's show is syndicated.

---

[1] Plaintiff's Second Amended Petition, ¶ 15.

**Defendants' Garza and Bernal's Motion for Judgment as a Matter of Law – Page 5**

The undisputed trial evidence is that the *El Chulo* show did not air in any markets in which Plaintiff had previously broadcast the show. Thus, there is no legally sufficient evidentiary basis for a reasonable jury to find Garza and Bernal breached the Agreements by working on-air for SBS in Los Angeles, a non-competing radio market.

Third, Amigo claims that Defendants breached the Agreements by resigning. But the very Agreements that Amigo drafted state in Section 1.7(a): "In the event Employee's employment hereunder is terminated pursuant to the provisions of Section 1.6 hereof due to the death, disability, for cause, *or the resignation of Employee*, Employer shall have no further obligation to Employee...". *See* D-Ex. 34 & 35. That unambiguous language makes clear that Garza and Bernal could terminate the Agreements by resigning their employment. In addition, Brooks testified that he read this portion of the Agreements to Garza and Bernal, and Garza testified without contradiction that Brooks told him that he could resign at any time. Moreover, Amigo's own Policy Manual – issued to Garza and Bernal after they signed the Agreements – unequivocally states that all employees have the right to resign unless they are covered by a collective bargaining agreement. D-Ex. 59. Garza and Bernal were not covered by a collective bargaining agreement. There is no legally sufficient evidentiary basis for a reasonable jury to find Garza and Bernal breached the Agreements by resigning.

Fourth, Amigo claims that Defendants have permitted SBS to use their names and likenesses for commercial and other business purposes without Amigo's consent. As set forth above, Amigo did not obtain any right or interest in the *El Chulo* show. Moreover, Amigo presented <u>no</u> evidence that SBS used Garza's or Bernal's individual names or likenesses to promote the El Chulo show. Even if there was some incidental use of the names or likenesses of "Joaquin Garza" or "Raul Bernal," Amigo has presented no evidence of resulting damages.

**Defendants' Garza and Bernal's Motion for Judgment as a Matter of Law – Page 6**

Because damages are an essential element of Amigo's breach of contract claim, the lack of damages independently defeats Amigo's claim.

Fifth, Amigo claims that Defendants have permitted SBS to use the Amigo Property, Amigo Trademarks, and Amigo Trade Secrets for business and commercial purposes without the written consent of Amigo. Again, this claim fails for the reasons stated above: Amigo did not obtain any rights in the *El Chulo* show, and it did not present legally sufficient evidence that Garza or Bernal have used or disseminated any trade secrets, confidential information, or trademarks of Amigo.

Finally, Amigo contends that Defendants are violating the terms of the license each of them granted to Amigo. This claim fails for the same reason as Amigo's fourth claim (above).

### C. Amigo Has Not Presented Legally Sufficient Evidence of Damages for Lost Profits.

Amigo did not present legally sufficient evidence of damages for lost profits sustained as a result of the supposed breach of contract. In *Information Commun. Corp. v. Unisys Corp.*, 181 F.3d 629 (5th Cir. 1999), the Fifth Circuit determined that a directed verdict was appropriate in a breach of contract case where the Plaintiff cannot prove lost profits with sufficient certainty. The court stated:

> We nonetheless do agree with the district court that ICC should be denied recovery on the court's alternative ground, that ICC presented insufficient evidence to support the jury's finding lost profits...The standard under Texas law for proving lost profits is onerous. The amount of profits lost "must be shown by competent evidence with reasonable certainty." *Texas Instruments, Inc. v. Teletron Energy Management, Inc.*, 877 S.W.2d 276, 279 (Tex. 1994). Lost profits may not be recovered where they are "too uncertain or speculative, or where the enterprise is new or unestablished." *Id.* In determining whether the claimed lost profits are speculative, courts are to consider whether they are "dependent on uncertain or changing market conditions, or on chancy business opportunities, or on promotion of untested products or entry into unknown or unviable markets, or on the success of a new and unproven enterprise." *Id.* Texas courts

have not hesitated to direct verdicts where plaintiffs have failed to present evidence of lost profits meeting these standards.

*Id.* at 633.

Amigo submitted no evidence of lost profits specifically attributable to the loss of the El Chulo y La Bola show. The sole evidence presented by Amigo on this point was the station's performance as a whole, which would require the jury to speculate as to what portion, if any, of the station's losses might be attributable to the loss of the show. Plaintiff has failed to present anything more than vague and conclusory testimony regarding lost profit damages and therefore any claim for such damages must be dismissed as a matter of law. *Id., see also, e.g., Brady v. Fort Bend County*, 145 F.3d 691 (5th Cir. 1998).

### IV. GARZA AND BERNAL ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S CLAIM FOR MISAPPROPRIATION /UNFAIR COMPETITION

Amigo next asserts a claim against Garza and Bernal for misappropriation of the "Amigo Property." However, Amigo has presented <u>no</u> evidence that either Garza or Bernal misappropriated anything belonging to Amigo. Amigo did not even present evidence that it developed trade secrets in the first place, or evidence that Garza or Bernal received trade secrets. Thus, there is no legally sufficient evidentiary basis for a reasonable jury to find for Amigo on the claim for misappropriation / unfair competition. Fed. Rule Civ. Proc. 50(a)(1); *Medical Care Am., Inc. v. Nat'l Union Fire Ins. Co.*, 341 F.3d 415, 420 (5th Cir. 2003); *Hunter v. Knoll Rig & Equip. Co.*, 70 F.3d 803, 808 (5th Cir. 1995) (judgment as a matter of law is appropriate where there is a complete absence of proof on an issue material to the claim). Judgment as a matter of law is appropriate.

## V. JUDGMENT AS A MATTER OF LAW IS APPROPRIATE ON AMIGO'S CLAIM FOR CONVERSION

It is clear from Plaintiff's current live pleading that this cause of action is alleged solely against SBS. However, in the abundance of caution in the event this Court concludes that it does assert such a claim against Garza and Bernal, judgment as a matter of law is appropriate on this claim as well. The elements of a cause of action for conversion are: (1) the Plaintiff owned, possessed, or had the right to immediate possession of the property at issue; (2) the property was personal property; (3) the defendant wrongfully exercised dominion or control over the property; (4) the plaintiff suffered injury. *Bures v. First Nat'l Bank*, 806 S.W.2d 935, 938 (Tex. App. – Corpus Christi 1991, no writ); *United Mobile Networks v. Deaton*, 939 S.W.2d 146, 147-48 (Tex. 1997).

Amigo presented no evidence that it owned the El Chulo show, the "property" at issue in this case, and likewise no evidence that Garza or Bernal wrongfully exercised dominion or control over the El Chulo show. Moreover, intangible property cannot be converted as a matter of law. *Express One Int'l v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App. –Dallas 2001, no pet.). Thus, there is no legally sufficient evidentiary basis for a reasonable jury to find for Amigo on the claim for conversion, and judgment as a matter of law is appropriate

## VI. JUDGMENT AS A MATTER OF LAW IS APPROPRIATE ON AMIGO'S CLAIM FOR BREACH OF FIDUCIARY DUTY

Amigo next asserts a claim against Garza and Bernal for breach of an alleged fiduciary duty. The essential elements of such a claim are: (1) the existence of a fiduciary duty; (2) a breach of the duty; and (3) damages caused by the breach. *Focus Direct, Inc. v. Sekulow*, 2003 U.S. Dist. LEXIS 16393 (W.D. Tex. 2003); *Mims v. Beall*, 810 S.W.2d 876, 879-90 (Tex. App. – Texarkana 1991, no writ).

A. **Amigo Has Presented No Evidence of the Existence of a Fiduciary Duty**

Amigo has presented absolutely no evidence, much less legally sufficient evidence, that either Garza or Bernal owed a fiduciary duty to Amigo. Amigo did not present evidence that Garza or Bernal either owed or breached a fiduciary duty. Thus, there is no legally sufficient evidentiary basis for a reasonable jury to find for Amigo on the claim for breach of fiduciary duty.

B. **Even Assuming a Fiduciary Duty Existed, Amigo Has Presented No Evidence That Garza or Bernal Breached Their Fiduciary Duty**

Even if they had a fiduciary duty to Amigo, which they did not, Garza and Bernal breached no such duty. As stated above, there is no evidence of a breach of contract by Garza and Bernal, and there has been no evidence that Garza and Bernal used or disclosed any trade secrets of Amigo.

C. **Plaintiff's Fiduciary Duty Claim Is Barred by the DeLanney Doctrine**

As demonstrated by Plaintiff's proposed jury charge, Plaintiff's basis for its fiduciary duty claim are (1) using the Amigo "Trade Secrets" in broadcasting the "El Chulo" show, (2) breaching the term of the employment agreements, and (iii) violating the terms of the license granted to Amigo by permitting SBS to broadcast the "El Chulo" show. *See* Plaintiff's Requested Jury Instructions, Jury Questions, and Jury Charge. All three of these claims arise out of contract.

When the loss or damage relates only to the subject matter of the contract, the action is one for breach of contract. *Southwestern Bell Tel. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991).

**Defendants' Garza and Bernal's Motion for Judgment as a Matter of Law – Page 10**

The *DeLanney* analysis is utilized by the 5th Circuit when analyzing breach of contract claims under Texas law. *See Northwinds Abatement v. Emplrs Ins.*, 258 F.3d 345, 352 (5th Cir. 2001) ("The Texas Supreme Court held there that "when the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." The essence of Northwinds' common law claims lay in Wausau's false statement that it was fully investigating the disputed workers compensation claims and in the resulting damages from increased premium payments when Northwinds was rendered unable to contest the claims. No liability independent of the contractual duty to handle claims exists as a result of this false statement. Neither of the common law claims can be sustained under Texas law."); *King v. Ames*, 179 F.3d 370, 375 (5th Cir. 1999) ("Ames did not owe King a duty to act as a reasonably prudent record producer until he entered into the licensing agreement with King. His duty, therefore, was created solely by contract, and King's recovery in that regard is limited to her action for breach of contract. Applying state law, we turn to the Texas Supreme Court's decision in…DeLanney, the Texas Supreme Court held that, to recover in tort, a plaintiff must demonstrate liability independent of the fact that a contract exists between the parties. As the only liability in the case at bar arises from the contract itself, there can be no tort liability and the negligence claim must fail."

## VII.  AMIGO HAS NO EVIDENCE OF BREACH OF CONSTRUCTIVE TRUST

To establish that a constructive trust exists, the proponent must prove three elements:  (1) breach of a special trust or confidence, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *See In the Matter of Monnig's Dept. Stores, Inc.*, 929 F.2d 197, 201 (5th Cir. 1991) (applying Texas law) (citations omitted); *Mowbray v. Avery*, 76 S.W.3d 663, 681 n.27 (Tex. App.-Corpus Christi 2002, pet. denied).  Texas courts require a proponent to "strictly prove" each of these elements. *See*

*Hubbard v. Shankle*, 138 S.W.3d 474, 485 (Tex. App.-Fort Worth 2004, pet. denied) (citing *Ginther v. Taub*, 675 S.W.2d 724, 725 (Tex. 1984)). Whether there is a special or fiduciary relationship is a question of law. *See Monnig's Dept. Stores, Inc.*, 929 F.2d at 202.

As discussed in the preceding section, Amigo presented <u>no</u> evidence of a relationship of special trust and confidence, much less a fiduciary relationship between Garza and Bernal, and Amigo. Further, Amigo failed to prove that Garza or Bernal committed fraud. Finally, Amigo provided no evidence of an identifiable res. There is therefore no legally sufficient evidentiary basis for a reasonable jury to find for Amigo on the claim for constructive trust.

### VIII.  AMIGO HAS NO EVIDENCE SUPPORTING ITS CLAIM FOR INVASION OF PRIVACY BY MISAPPROPRIATION

Amigo presented no evidence that Garza or Bernal appropriated Amigo's name or likeness, or that Amigo can be identified from any such publication. Each of these are required elements of a claim for invasion of privacy by misappropriation. *See Express One Int'l v. Steinbeck*, 53 S.W.3d 895, 900 (Tex. App. –Dallas 2001, no pet.). Thus there is no legally sufficient evidentiary basis for a reasonable jury to find for Amigo on the claim for invasion of privacy by misappropriation.

### IX.  AMIGO HAS NO EVIDENCE SUPPORTING ITS CLAIM FOR VIOLATION OF THE LANHAM ACT

The Lanham Act imposes civil liability for infringement of an unregistered mark where the defendant's use has an effect on commerce. 15 U.S.C.A. § 1125. Amigo has presented no evidence of its possession of an "unregistered mark." The evidence presented in fact shows the contrary, in that the Employment Agreements do not grant Amigo any interest in unregistered trademarks pertaining to the El Chulo y La Bola show. D-Exs. 34 & 35. The contract is unambiguous on this point. The evidence is also clear that Garza and Bernal developed and

utilized the show well before they entered into the Agreements with Amigo, and the fact that their use predates Amigo's makes their Lanham Act claim untenable, given that the first user of an unregistered mark possesses the superior right to the mark. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *March Madness Ath. Ass'n v. Netfire, Inc.*, 310 F. Supp. 2d 786, 812 (N.D. Tex. 2003). There is therefore no legally sufficient evidentiary basis for a reasonable jury to find for Amigo on the claim for violation of the Lanham Act.

### X. PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES FAILS AS A MATTER OF LAW.

To recover punitive damages under Texas law, a plaintiff must prove—by clear and convincing evidence—that the underlying harm resulted from either (1) fraud; (2) malice; or (3) gross negligence on the part of the defendant. TEX. CIV. PRAC. & REM. CODE § 41.003. In this case, Plaintiff presented no evidence that Garza or Bernal engaged in fraud, malice, or gross negligence, much less the clear and convincing evidence needed to support an award of exemplary damages. Accordingly, Garza and Bernal are entitled to judgment as a matter of law on Plaintiff's claim for punitive damages.

### XI. PLAINTIFF'S CLAIM FOR ATTORNEYS' FEES FAILS AS A MATTER OF LAW.

Plaintiff alleges that it is entitled to recover its attorneys' fees from Garza and Bernal. However, a prevailing party can recover attorneys' fees from an opposing party only if such recovery is expressly authorized by agreement between the parties or statute. No agreement exists between Plaintiff and Defendants authorizing recovery of attorneys' fees. In addition, no state statute exists authorizing Plaintiff to recover attorneys' fees from Defendants on the claims asserted in this action. *See generally* TEX. CIV. PRAC. & REM. CODE § 38.001; *see also, e.g., Stewart & Stevenson Servs. v. Serv-Tech, Inc.*, 879 S.W.2d 89, 103-104 (Tex. App.—Hous. [14th

Dist.] 1994, writ denied) (noting that attorneys' fees not recoverable for misappropriation claim).

One relevant federal statute allows for recovery of attorneys' fees in limited circumstances. To obtain attorneys' fees under the Lanham Act, a case must be "exceptional." *See* 15 U.S.C. § 1117(a). The Fifth Circuit has consistently held that cases are exceptional under this statute when the defendant's acts can be characterized as malicious, fraudulent, deliberate, or willful, and there has been a showing of the defendant's high degree of culpability. *March Madness Athletic Ass'n LLC v. Netfire Inc.*, 120 Fed. Appx. 540, 546 (5th Cir. 2005); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372-73 (5th Cir. 2000); *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996). The prevailing party has the burden to demonstrate the exceptional nature of the case by clear and convincing evidence. *March Madness Athletic Ass'n*, 120 Fed. Appx. at 546; *Pebble Beach Co. v. Tour 18 Limited*, 155 F.3d 526, 555 (5th Cir. 1998), *abrogate on other grounds by TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001); *Seven-Up*, 86 F.3d at 1390. Even if a party demonstrates that a case is exceptional, the trial court retains discretion not to award attorneys' fees. *Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 696 (5th Cir. 1992).

Plaintiff in this case offered no evidence—and certainly not clear and convincing evidence—that Defendants' actions were exceptional. For example, in *Pebble Beach*, the court awarded no attorneys' fees when the defendant intentionally and deliberately copied famous golf holes in designing its golf course. 155 F.3d at 555-56. In *Texas Pig Stands*, the court held that the defendant's use of another company's trademark was unexceptional for purposes of an attorneys' fee award even though the jury found the defendant's conduct was willful. 951 F.2d at 697. In *CJC Holdings, Inc. v. Wright & Lato, Inc.*, the court held that the case was unexceptional despite the fact that the defendant deliberately copied jewelry produced by the

plaintiff. 979 F.2d 60, 65-66 (5th Cir. 1992). In *Seven-Up Co. v. Coca-Cola Co.*, the court held that a beverage company that made presentations to certain independent bottlers that used false and misleading information regarding a competing beverage did not amount to an extraordinary violation of the Lanham Act. 86 F.3d 1379 (5th Cir. 1996). And most recently, in *March Madness Athletic Ass'n LLC*, the court held that denial of attorneys' fees to a trademark owner who prevailed in a cybersquatting case was not an abuse of discretion when the owner's rights were not readily apparent when the defendant acquired the domain name in question and the owner was unable to prove damages. 120 Fed. Appx. at 546.

In these cases, none of the defendants' behavior demonstrated a high enough degree of culpability to cause the case to be "exceptional" for purposes of awarding attorneys' fees under the Lanham Act. Likewise, Garza and Bernal's conduct in this case has not been proven to be exceptional. Accordingly, even if Plaintiff prevails on its Lanham Act claim—which it cannot—this Court should find that this is an "unexceptional case" in which an award of attorneys' fees to Plaintiff is unwarranted as a matter of law.

## XII. CONCLUSION

Since the inception of the lawsuit, it has remained Plaintiff's obligation to prove, by a preponderance of the evidence, the elements of each of its numerous causes of action against Defendants. It has not done so. No reasonable juror could conclude that Plaintiff is entitled to damages or any relief on any of the alleged causes of action. Plaintiff has not met its burden at trial and, consequently, Garza and Bernal are entitled to judgment as a matter of law. For the reasons set forth herein, and for the reasons set forth in SBS' Motion for Judgment as a Matter of Law, Defendants Garza and Bernal respectfully request that this Motion be granted in its entirety.

Respectfully submitted,

_____
Bruce A. Griggs
Texas State Bar No. 08487700
Scott Brutocao
Texas State Bar No. 24025781
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
301 Congress Avenue, Suite 1250
Austin, Texas 78701
512.344.4700
512.344.4701 facsimile

Attorneys for Defendants
Joaquin Garza and Raul Bernal

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was served via hand delivery, to all counsel of record on this 4th day of May, 2006.

J. Michael Tibbals
Snell Wylie & Tibbals
8150 N. Central Expressway, Suite 1800
Dallas, Texas 75206

John K. Schwartz
Locke Liddell & Sapp LLP
100 Congress Ave., Suite 300
Austin, Texas 78701

_____
Bruce Griggs / Scott Brutocao