IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| AMIGO BROADCASTING, L.P., § | |
| Plaintiff, § | |
| § | |
| v. § | CAUSE NO. A-05-CV-193-JN |
| § | |
| SPANISH BROADCASTING SYSTEM, § | |
| INC., RAUL BERNAL, and JOAQUIN § | |
| GARZA, § | |
| Defendants. § | |

## MEMORANDUM AND RULING ON DEFENDANTS' MOTIONS FOR A JUDGMENT AS A MATTER OF LAW

Before the Court are Defendants' Motions for Judgment as a Matter of Law. Based on the said motions, and the applicable legal authorities, the Court enters the following Ruling and a Memorandum in Support Thereof.

### I. BACKGROUND

The above-entitled cause of action stems from a termination of an employment relationship between Plaintiffs Amigo Broadcasting, L.P. ("Amigo") and Defendants Joaquin Garza ("Garza") and Raul Bernal ("Bernal").

In the early 1990s Garza created the *El Chulo y La Bola* show (the "Show"). The Show is a Spanish-language radio program involving a variety of fictional characters. Garza and Bernal play the roles of all of the fictional characters on the Show. Originally, Garza and Bernal performed the Show on Spanish-language radio stations in California. Form September 2001 to March 2002, Garza and Bernal performed the Show from Corpus Christi, Texas.

In April 2002, Garza and Bernal agreed with Amigo to broadcast the Show on Amigo's Spanish-language radio station in Austin, Texas. At Garza's and Bernal's request, the parties entered into 3-year Employment Agreements (the "Agreements").

In late November 2003, roughly 20 months into their Agreements, Garza and Bernal resigned from Amigo. Approximately one month later, in December 2003, Garza and Bernal began broadcasting the *Show* on a Spanish-language radio station owned by Spanish Broadcasting System, Inc. ("SBS"), in Los Angeles, California.

Based on Garza's and Bernal's untimely resignation, Amigo sued Garza, Bernal, SBS, Latin Entertainment Network, Inc. ("LEN"), and Anthony Hernandez ("Hernandez"), alleging a garden variety of claims, nearly all of which stem from Garza's and Bernal's alleged breach of their Agreements with Amigo. Specifically, Amigo pled the following claims: (1) breach of contract; (2) misappropriation / unfair competition; (3) conversion; (4) breach of fiduciary duty; (5) constructive trust; (6) invasion of privacy by misappropriation; (7) violation of the Lanham Act; and (8) tortious interference with a contract. LEN and Hernandez settled with Amigo, leaving Garza, Bernal and SBS as the sole Defendants.

On 2 May 2006, a jury trial began. At the close of Amigo's evidence, Garza, Bernal and SBS filed their motions for a judgment as a matter of law on all of Amigo's claims.

On 4 May 2006, the Court heard the parties' arguments on Defendants' motions. At the hearing, Amigo withdrew their claims for misappropriation / unfair competition, conversion, breach of fiduciary duty, constructive trust, invasion of privacy by misappropriation, and violation of the Lanham Act, leaving only their beach of contract and

tortious interference with a contract claims for the Court's consideration on the Rule 50 motions.

After hearing the parties' arguments, and having throughly considered the evidence presented by Amigo in its case in chief, the Court granted Defendants' motions.

## II. STANDARD

Rule 50, of the Federal Rules of Civil Procedure, governs the granting of motions for judgment as matter of law. Specifically, Rule 50 provides that

> If during a trial by jury a party has been fully heard on the issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

FED. R. CIV. P. 50 (1)(a).

In determining whether to grant a Rule 50 motion, the Court should

> [C]onsider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable people could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motion[], that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion[] should be denied and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question to the jury. The motion[] . . . should not be decided by which side has the better of the case, nor should [it] be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question.

*Boeing Co. v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc) (overruled on other

grounds by *Gautreax v. Scurlock Marine, Inc.*, 107 F.3d 331, 339 (5th Cir 1997)). "There is no legally sufficient evidentiary basis when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001) (citations omitted).

### III. ANALYSIS

A federal court sitting in diversity must apply the substantive law of the forum state and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460 (1965); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). Accordingly, Texas substantive law controls the Courts analysis of Amigo's claims.

### A. Breach of Contract

Amigo alleged that Garza and Bernal breached their Agreements with Amigo by: (1) unlawfully using and disseminating to SBS Amigo's trade secrets; (2) directly competing with Amigo by broadcasting the Show on SBS' radio stations; (3) untimely resigning from Amigo; (4) permitting SBS to use their names and likeness for commercial purposes without Amigo's consent; and (5) violating the terms of the licenses that they had granted to Amigo.

Under Texas law, to recover on their breach of contract claim, the plaintiff must plead and prove the following four elements: (1) the existence of a contract; (2) performance or tendered performance by the plaintiff; (3) a breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *Southwell v. University of Incarnate Word*, 974 S.W.2d 351, 354-55 (Tex. App.—San Antonio 1998, pet.

4

denied) (citing *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no writ); *Garner v. Corpus Christy Nat. Bank*, 944 S.W.2d 469, 476 (Tex. App.—Corpus Christi 1997, writ denied); *St. Paul Ins. Co. v. Rakkar*, 838 S.W.2d 622, 629 (Tex. App.—Dallas 1992, writ denied)). "The meaning given to the language in a contract is . . . a question of law for the court." *Bank One, Tex., N.A. v. Stewart*, 967 S.W.2d 419, 432 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (citing *Snyder v. Eanes Ind. Sch. Dist.*, 860 S.W.2d 692, 696 (Tex. App.—Austin 1993, writ denied)). "Likewise, whether a party has breached a contract is a question of law for the court and not a question of fact for the jury." *Id.* (citing *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied)); *ITT Commercial Fin. Corp. v. Riehn*, 796 S.W.2d 248, 253 n. 3 (Tex. App.—Dallas 1990, no writ). In deciding whether the contract has been breached, the court must enforce the language in the contract as it is written by "looking at the objective intent as manifested by the language used, rather than interpreting it by attempting to divine the subjective intent of the parties." *Sulzer Carbomedics, Inc. v. Oregon Cardio-Devices, Inc.*, 257 F.3d 449, 457 (5th Cir. 2001) (citing *Clardy Mfg. Co. v. Marine Midland Bus. Lonas Inc.*, 88 F.3d 347, 352 (5th Cir 1996), *cert. denied*, 519 U.S. 1078 (1997) (citing *Sun Oil (Del.) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981))). "If a contract is worded in such a manner that it can be given a definite or certain legal meaning, then it is not ambiguous." *Hitzelberger v. Samedan Oil Corp.*, 948 S.W.2d 497, 504 (Tex. App.—Waco 1997, writ denied) (citing *Friendship Development Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *R & P*

*Enterprises v. La Guarta, Gavrel & Kirk*, 596 S.W.2d 517, 519 (Tex. 1980)).

Based on the unambiguous language of the Agreements and Amigo's trial witnesses and exhibits, there exists no legally sufficient evidence for a reasonable jury to find that Garza and Bernal breached their Agreements with Amigo by using or disseminating any of Amigo's trade secrets. In § 1.8(a), the Agreements define Amigo's "Trade Secrets" as

> [U]nique skills, concepts, sales presentations, marketing programs, marketing strategy, business practices, methods of operation, *trademarks, licenses*, technical information, *proprietary information*, computer software programs, tapes and discs concerning [Amigo's] operations, systems, financial and other confidential and proprietary information concerning [Amigo's] business operations . . . .

Amigo alleged that the broadcast the Show on SBS' radio station constitutes unauthorized use and dissemination of its trade secrets. However, nothing in the Agreements grants to Amigo any rights to the Show, the Show's characters, the Show's content, or any intellectual property related to the Show. Indeed, § 1.1, the Agreements provide only that

> Employee hereby grants Employer a nonexclusive royalty free license to use *Employee's name and/or likeness* to promote the Station and its programming, including any program hosted by Employee or syndicated by Employer, during the term of this Agreement.

Because Amigo has not offered any evidence that it had acquired any interest in the Show, the Show is not, under the terms of the Agreements, Amigo's trade secret. Thus it follows that by broadcasting the Show on SBS' radio station, Garza and Bernal did not use or disseminate Amigo's trade secrets in violation of their Agreements.

Nor is there legally sufficient evidence that Garza and Bernal breached their Agreements by competing directly with Amigo. In § 1.8(b), the Agreements clearly state that

6

> Employee further covenants and agrees that he shall not for 12 months following Employee's termination of employment with Employer, directly or indirectly, host, co-host or appear as a guest, commentator or any other "on-air" position with a commercial Spanish language radio station *within the Austin, Texas broadcast area or any other broadcast area in which Employee's show is syndicated.*

The evidence presented at trial established conclusively that after resigning from Amigo Garza and Bernal did not broadcast the show from either the Austin, Texas broadcast area or any of the markets in which Amigo had previously broadcast the Show. Rather, once at SBS, Garza and Bernal performed the Show from Los Angeles, California, a non-competing radio market.

Nor is there legally sufficient evidence that Garza and Bernal breached their Agreements by resigning from Amigo. In § 1.7(a), the Agreements provide that

> In the event Employee's employment hereunder is terminated pursuant to the provisions of Section 1.6 hereof due to death, disability, for cause, *or the resignation of Employee*, Employer shall have no further obligation to Employee . . . .

In their clear, unambiguous terms, the Agreements provide that Garza and Bernal could resign. This provision of the Agreements is bolstered further by the fact that Amigo drafted the Agreements at Garza's and Bernal's request, for Garza's and Bernal's protection. In addition, Amigo's own Policy Manual, which Amigo issued to both Garza and Bernal after they had signed their Agreements, unequivocally states that all employees have the right to resign unless they are covered by collective bargaining agreements. Garza and Bernal were not covered by collective bargaining agreement, and thus, they were free to resign.

Nor is there legally sufficient evidence that Garza and Bernal breached their

7

Agreements by permitting SBS to use their names and likenesses for commercial and other purposes without Amigo's consent. As set forth above, Amigo did not offer any evidence that it obtain any rights or interests in the Show, and thus any use of the names of the Show's characters by SBS to promote the Show, did not, in any way, violate the Agreements. Moreover, the terms of the Agreements restricting the use of individual names and likenesses of Garza and Bernal were binding only during Garza's and Bernal's employment at Amigo. Because Garza and Bernal had resigned from Amigo, they were no longer restricted from using, or allowing others to use, their names and likenesses when they begun working for SBS. Notwithstanding, Amigo presented no evidence that SBS had ever used Garza's or Bernal's individual names or likenesses to promote the Show. And even if SBS had incidentally used Garza's and Bernal's individual names or likenesses, Amigo nonetheless presented no evidence of any damages resulting from such use.

Finally, there is an absence of legally sufficient evidence that Garza and Bernal violated the terms of the licenses that they granted to Amigo. As explained above, Amigo presented no evidence that Garza and Bernal ever granted to Amigo any rights or licenses to the Show. As such, Amigo cannot complain of a violation of a license that it never had.

### B. Tortious Interference With a Contract

Under Texas law, to recover on a claim for tortious interference with a contract, the plaintiff must prove: (1) the existence of a contract subject to interference; (2) the occurrence of an act of interference that was willful and intentional; (3) the act was the proximate cause of plaintiffs damages; and (4) actual damage or loss occurred. *See John Paul Mitchell Sys.*

*V. Randalls Food Mkts., Inc.*, 17 S.W.3d 721, 730 (Tex. App.—Austin 2000, pet. denied) (citing *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997); *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996)); *Diesel Injection Sales & Servs., Inc. v. Renfro*, 656 S.W.2d 568, 573 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.). To succeed on tortious interference with an employment contract, the plaintiff must show that the third party's interference was the proximate cause of the breach of the employment relationship; there is no actionable wrong if the employee acted on his own initiative. *Bray v. Squires*, 702 S.W.2d 266, 271 (Tex. App.—Houston [1st Dist.] 1985, no writ) (citing *Custom Drapery Co. v. Hardwick*, 531 S.W.2d 160, 166 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ)).

Amigo presented no evidence at trial that SBS interfered with Garza's and Bernal's Agreements with Amigo, or that Garza's and Bernal's Agreements were even subject to SBS' interference. Indeed, the evidence presented at trial established concretely that SBS offered employment to Garza and Bernal in December 2003, nearly a month after Garza and Bernal had resigned from Amigo in November 2003. As such, Garza and Bernal were no longer bound by their Agreements with Amigo, and their Agreements were no longer subject to interference when SBS offered them employment.

Moreover, Amigo presented no evidence that SBS either caused or in any way encouraged Garza and Bernal to resign from Amigo. To the contrary, the evidence revealed that Garza and Bernal resigned from Amigo on their own volition after Hernandez had encouraged them to syndicate the Show.

9

## IV. CONCLUSION

Based on the foregoing, the Court finds that the facts and inferences point so strongly and overwhelmingly in favor of Defendants Garza, Bernal and SBS that no reasonable jury could arrive at a verdict for Amigo on any of Amigo's claims. Consequently, the Court hereby GRANTS Defendants' Motions for a Judgment as a Matter of Law; all of Amigo's claims against Defendants SBS, Garza and Bernal are hereby DISMISSED with prejudice.

IT IS SO ORDERED.

SIGNED AND ENTERED this 12TH day of May, 2006.

_____
JAMES R. NOWLIN
UNITED STATES DISTRICT JUDGE